# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND CROCHET | CIVIL ACTION NO. |
| VERSUS | 16-36-SDD-EWD |
| BRISTOL-MYERS SQUIBB COMPANY And OTSUKA AMERICA PHARMACEUTICAL INC. | |

## RULING

     This matter is before the Court on the *Motion for New Trial*[1] by Plaintiff, Raymond Crochet ("Crochet" or "Plaintiff"). Defendants Bristol-Myers Squibb Company and Otsuka America Pharmaceutical, Inc. (collectively "Defendants") filed an *Opposition*[2] to this motion, to which Plaintiff filed a *Reply*.[3] For the following reasons, the Court finds that Plaintiff's motion should be DENIED.

## I.    FACTUAL BACKGROUND[4]

     Crochet filed suit after contracting Tardive Dyskinesia ("TD") allegedly as a result of taking the prescription drug Abilify. Crochet was first prescribed Abilify in August of 2012,[5] as an adjunct to therapy to treat his depression.[6]

---

[1] Rec. Doc. 140.
[2] Rec. Doc. 144.
[3] Rec. Doc. 149.
[4] The full background of this case is set forth in the Court's prior *Ruling* at Rec. Doc. 138.
[5] Rec. Doc. 35-10, p. 30.
[6] Rec. Doc. 35-1, p. 4; Rec. Doc. 35-3, p. 63-64.

On July 28, 2014, a doctor noticed that Crochet had developed a "shuffling gait" and Parkinsons-like symptoms,[7] explained to Crochet that the Parkinsons-like symptoms may be a side effect of Abilify, and advised that he wanted a neurologist to "confirm this."[8]

On August 1, 2014, Dr. Houser instructed Crochet to avoid neuroleptics and to decrease his Abilify to 10 mg daily until he saw a psychiatrist about weaning off the drug.[9] Crochet testified that he understood at that time that the shuffling gait may have had something to do with Abilify, and Dr. Houser was concerned that Abilify may be responsible for that.[10] Shortly after stopping the Abilify, Crochet's shuffling gait went away.[11] Soon thereafter, Crochet began experiencing involuntary mouth and tongue movements. Crochet testified that the tongue movements began sometime between his first and second visit with Dr. Houser and that he believed that stopping the Abilify might have caused the problem.[12]

On September 18, 2014, Crochet visited LifeNet Psychiatry where he was under the care of Scott St. Amant ("St. Amant"), a family psychiatric mental health nurse practitioner.[13] On that date, St. Amant first noted that Crochet presented with obvious lip-smacking and involuntary tongue movements.[14] St. Amant instructed Crochet to follow up with a neurologist due to the orofacial movements he observed.[15]

---

[7] Rec. Doc. 35-11, p. 4.
[8] Rec. Doc. 35-4, pp. 82-85.
[9] Rec. Doc. 35-1, p. 6; Rec. Doc. 35-12, p. 4.
[10] *Id.*; Rec. Doc. 35-3, pp. 57-58, 96-98.
[11] Rec. Doc. 35-3, pp. 98-100.
[12] Rec. Doc. 35-3, pp. 98-99, 117-118.
[13] Rec. Doc. 35-1, p. 7; Rec. Doc. 35-8, pp. 7, 46-47, 51, 62.
[14] Rec. Doc. 35-8, pp. 53-65; Rec. Doc. 35-13.
[15] *Id.*

On October 3, 2014, Crochet again visited LifeNet Psychiatry. St. Amant again noted that Crochet presented with lip smacking and with an attenuated shuffling gait.[16] St. Amant noted that the symptoms had been ongoing for at least two weeks and again referred Crochet to see a neurologist.[17] St. Amant testified that he was concerned about the orofacial movements because he thought it was consistent with TD.[18] On October 7, 2014, Crcochet saw Dr. Houser for the second time. At this visit, Dr. Houser observed the mouth movements and diagnosed Crochet with TD.[19]

On April 24, 2018, this Court granted Defendants' *Motion for Summary Judgment*[20] on prescription grounds. The Court ruled that Crochet's claims were time-barred under Louisiana law because Crochet's injury occurred in September of 2014 and prescribed in September 2015. Thus, Crochet's claim, filed October 7, 2015, was prescribed as a matter of law.[21]

Crochet now moves for a new trial pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on the grounds that this Court's *Ruling* contains "clear errors of law and fact, and would result in manifest injustice if not corrected."[22] Specifically, Crochet argues that the Court "did not properly apply the Louisiana doctrine of *contra non valentem*, based its ruling on errors of fact, and decided material issues of fact that should have been reserved

---

[16] Rec. Doc. 35-8, pp. 74-75; Rec. Doc. 35-1, p. 7.
[17] Rec. Doc. 35-8, p. 80.
[18] Rec. Doc. 35-8, pp. 80-82.
[19] Rec. Doc. 35-5, pp. 26-27.
[20] Rec. Doc. 35.
[21] Rec. Doc. 138, p. 9.
[22] Rec. Doc. 140-1, p. 1.

Document Number: 49157

for trial."[23] Crochet alleges the Court relied on three manifest errors of fact and three manifest errors of law in granting Defendants' *Motion for Summary Judgment.*

## II.    Law and Analysis

### A.  Motion for New Trial

"A rule 59(e) motion 'calls into question the correctness of a judgment.'"[24] "A Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence"[25] and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[26] "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"[27] The Fifth Circuit has explained that reconsideration of a judgment after it has been entered under Rule 59(e) "[i]s an extraordinary remedy that should be used sparingly."[28] "While the district courts do have 'considerable discretion in deciding whether to grant or deny a motion to alter judgment,' denial of a Rule 59(e) motions to alter or amend is favored."[29]

### B.  Manifest Error of Fact

Crochet has not introduced any new evidence or suggested that there has been a change in controlling law. Therefore, the inquiry here concerns Crochet's alleged errors

---

[23] *Id.*

[24] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. F.3d 571, 581 (5th Cir.2002))

[25] *Advocare Intern. LP v. Horizon Laboratories, Inc.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir 1159 (5th Cir.1990)).

[26] *Templet*, 367 F.3d 473, 478–9(5th Cir.2004).

[27] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. Records, 370 F.3d 183, 195 (1st Cir.2004)).

[28] *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.,* 2000)).

[29] *Brown v. Louisiana State Senate*, 2013 WL 5603232, at *1 (M.D.La. Oct. 11, 2013)(quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir.1995)).

of fact and law. Crochet argues the Court erroneously relied on the following three facts: (1) that the shuffling gait Crochet experienced in July 2014 related to tardive dyskinesia; (2) that "on September 28, 2014, Dr. St. Amant told Mr. Crochet that his lip smacking and involuntary mount movements were caused by Abilify;" and (3) that Crochet's testimony reflects his awareness that Abilify produced his TD prior to October 7, 2014.[30] Crochet contends the above factual inferences should not have been made in a summary judgment and are not supported by the evidence.[31]

Crochet first argues that his "shuffling gait was likely not caused by tardive dyskinesia,"[32] therefore the Court erred in finding this an undisputed fact. Defendants contend the Court did not rely on Crochet's shuffling gait symptoms for its holding that Crochet's injury occurred in September 2014.[33] Defendants are correct. As explained previously, Crochet's own testimony reflects that he was aware of his symptoms prior to October 2014, and "[i]t is the plaintiff/patient's knowledge of the connection between his/her alleged injuries and damages and the medical product that is key to the accrual of the cause of action."[34] In *Jenkins v. Bristol-Myers Squibb*, the Fifth Circuit affirmed a district court's decision granting summary judgment in favor of the defendants based on prescription. In *Jenkins*, the court found that prescription began to run on an LPLA claim involving TD and Abilify when the plaintiff sustained tremors, fidgeting, and jaw clenching,

---

[30] Rec. Doc. 140-1, p. 5.
[31] *Id.*
[32] *Id.*
[33] Rec. Doc. 146, p. 4.
[34] *Peterson v. C.R. Bard, Inc.*, No. CV 13-0528, 2015 WL 2239681, at *2 (M.D. La. May 12, 2015), aff'd, 654 F. App'x 667 (5th Cir. 2016).

Document Number: 49157

and was aware of their connection to Abilify.[35] Similarly, the Court found that Crochet's symptoms manifested in September 2014, and he was aware of the symptoms' connection to Abilify.[36] Because the Court found, based on Crochet's own admission, that Crochet's "injury occurred in September of 2014," it clearly did not rely on Crochet's shuffling gait experienced in July in reaching this conclusion. The undisputed facts before the Court demonstrated that Crochet was aware of cognizable injuries potentially connected to Abilify before October 7, 2014.

Next, Crochet argues that the Court erroneously found that, "on September 28, 2014, Dr. St. Amant told Mr. Crochet that his lip smacking and involuntary mouth movements were caused by Abilify."[37] Specifically, the Court previously found that on September 28, 2014, "St. Amant advised Crochet to consult a neurologist about the orofacial movements because he was concerned that it was TD."[38] This Court did not find that St. Amant told Crochet that his orofacial movements "were caused by Abilify," as Crochet contends, but found that the record demonstrated that St. Amant was concerned about the possibility of TD. As Defendants note, this Court did not rely on this fact in determining the prescriptive date of Crochet's claims. Crochet's own testimony established that he was aware that his symptoms were being caused by Abilify before October 7, 2014.[39]

---

[35] 689 F. App'x 793 (5th Cir. 2017).
[36] Rec. Doc. 35-3, p. 118, lines 3-16.
[37] Rec. Doc. 140-1.
[38] Rec. Doc. 138, p. 8.
[39] Rec. Doc. 35-3, p. 118, lines 3-16.

Document Number: 49157

Crochet's last allegation of factual error is the Court's finding that his deposition testimony established that he was aware prior to October 7, 2014 that his TD was caused by Abilify.[40] Plaintiff testified:

> Q: … [On] August 1st of 2014, [Dr. Houser] told you that he thought that your movement issues could be related to Abilify. Correct?
> A: That's correct.[41]
> ….
> Q: Did you know before you looked up Abilify that it was the Abilify that was probably –
> A: Yes, I knew that when I stopped taking the drug this started happening. That's the only variable there was.
> Q: So you're taking Abilify, you stop taking Abilify, and then you start experiencing the mouth movements. And so at that point you knew it had to be the Abilify because that's what happened when you stopped taking it?
> A: Yes.
> Q: And so that's why you looked it up?
> A: Yes.[42]

Crochet's testimony demonstrates that he knew of his injury and its connection to Abilify before October 7, 2014.

In denying a similar motion for reconsideration in *Jenkins*, the court relied on the plaintiff's testimony that "obviously [he] was off Abilify and that's what was causing [the facial movement issues]" to establish when the prescription period began to run.[43] Based on the testimony above, it is undisputed that Crochet exhibited cognizable injuries and was aware of their connection to Abilify prior to October 7, 2014. Crochet's challenge appears to be to his own testimony, not the Court's factual finding as Crochet's testimony established the prescription date upon which the Court relied.

---

[40] Rec. Doc. 140-1, p. 7.
[41] Rec. Doc. 35-3, p. 107, lines 7-12.
[42] *Id.* at 118, lines 3-16.
[43] *Jenkins v. Bristol-Myers Squibb*, 2016 WL 5874984 (E.D. La. 2016).

Document Number: 49157

### C. Manifest Errors of Law

Crochet further claims that this Court committed three manifest errors of law in granting Defendants' Motion for Summary Judgment: (1) the Louisiana doctrine of *contra non valentem* was not properly applied; (2) the previous ruling "was inconsistent with governing Louisiana law dictating the strict construction of prescriptive periods in favor of maintaining a right;"[44] and (3) that "the ruling improperly decided material issue of fact in a Summary Judgment."[45] Crochet's arguments are without merit.

Crochet first argues that "this Court failed to apply the reasonableness standard mandated by *Griffin v. Kinberger*[46] and failed to construe *contra non valentem* in favor of maintaining a right as mandated by *Wells v. Zadeck*…."[47] However, the Court quoted directly from *Griffin* explaining that "[p]rescription does not run as long as it was reasonable for the victim not to recognize that the [injury] may be related to the [tort]."[48] And as previously discussed at length, and congruent with the Fifth Circuit's reasoning in *Jenkins*, Crochet's undisputed testimony demonstrates that he was aware, prior to October 7, 2014, that his injury was related to Ablifiy.

Crochet's second argument is that the Court's "[r]uling was inconsistent with governing Louisiana law dictating the construction of prescriptive periods in favor of maintaining a right."[49] However, like *Jenkins*, the Court found that Crochet's testimony

---

[44] Rec. Doc. 140-1, p. 12.
[45] *Id.* at 14.
[46] 507 So.2d 821 (La. 1987).
[47] Rec. Doc. 140-1, pp. 9-10.
[48] Rec. Doc. 138, p.6 (citing *Jenkins*, 689 F. App'x at 796 (5th Cir. 2017)(quoting *Griffin v. Kinberger*, 507 So.2d 821, 823-24 (La. 1987)).
[49] Rec. Doc. 140-1 p. 12.

demonstrated sufficient knowledge of the connection between his injury and the Abilify more than one year before filing suit. All of the evidence demonstrates that Crochet's prescriptive period began to run prior to October 7, 2014.

Plaintiff's third argument is that "this Court's ruling was a manifest error of procedural law. Courts may not weigh evidence or otherwise decide disputed issues of fact at summary judgment."[50] Crochet alleges this "Court's ruling was based on factual inferences it drew from deposition testimony." However, Crochet does not dispute his own deposition testimony nor deny his credibility. "Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about the facts."[51] Here, the Court based its *Ruling* on Crochet's undisputed testimony.

Crochet attempts to distinguish *Jenkins* by stating that in *Jenkins*, the "Court was able to decide the issue of reasonableness as a matter of law because the plaintiff's knowledge of harm and causation more than a year prior to his suit was an undisputed fact."[52] However, the Fifth Circuit reiterated when affirming *Jenkins* that, under Louisiana law, "[t]he commencement of prescription does not ... wait for the pronouncement of a victim's physician or of an expert."[53] There, the court found the plaintiff did "not dispute that he sustained tremors, fidgeting, and jaw clenching in April 2013. At that moment,

---

[50] Rec. Doc. 140-1, p. 14.
[51] *Templet*, 367 F.3d 473 (5th Cir. 2004).
[52] Rec. Doc. 140-1, pp. 18-19.
[53] *Jenkins v. Bristol-Myers Squibb Co.*, 689 F. App'x 793, 796 (5th Cir. 2017)(citing *Luckett v. Delta Airlines, Inc.* 171 F.3d 295, 300 (5th Cir. 1999)).

Document Number: 49157

both of his LPLA claims accrued."[54] Similarly, Crochet does not dispute his testimony, and his claim began to toll in September 2014.

Further, the Fifth Circuit in *Jenkins* explained that tolling pursuant to *contra non valentem* does not continue until "conclusive, dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established."[55] The Fifth Circuit found his claims time barred because "Jenkins knew that his twitching may have been related to Abilify in April 2013. He said as much in his deposition under oath."[56] Like *Jenkins*, it is undisputed that Crochet knew that his involuntary movements may have been related to Abilify in September 2014.

Finally, Crochet has not made a compelling showing that a new trial is necessary to prevent manifest injustice. Crochet cites no authority in his six-sentence argument supporting manifest injustice. Therefore, the Court's *Ruling* granting summary judgment was not based on manifest error of law or fact, nor is a new trial necessary to prevent injustice.

---

[54] *Id.* (internal quotations omitted).
[55] *Id.* (quoting *Carter v. Matrixx Initiatives Inc.,* 391 F.Appx. 343, 345-46 (5th Cir. 2010)(internal quotations omitted).
[56] *Id.*

Document Number: 49157

## III.    CONCLUSION

Accordingly, the *Motion for New Trial* filed by the Plaintiff Raymond Crochet is

DENIED.[57]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 13th day of December**,** 2018.


_Shelly D. Dick_

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[57] Rec. Doc. 140.

Document Number: 49157